JULIO VILLASANA,          )
           )
          Petitioner,    )
           )
v.           )      No. 3:13-cv-00596
           )      Judge Sharp
HENRY STEWARD, Warden,    )
           )
          Respondent.    )

## M E M O R A N D U M

## I.    INTRODUCTION AND PROCEDURAL HISTORY

The court has before it a *pro se* petition for a writ of *habeas corpus* brought under 28 U.S.C. § 2254. (Docket No. 1). The petitioner, Julio Villasana, is an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee. On November 30, 2006, the petitioner was indicted by the Davidson County Grand Jury for two counts of aggravated vehicular homicide and one count of leaving the scene of an accident. On May 24, 2007, the petitioner entered guilty pleas to one count of aggravated vehicular homicide, a Class A felony, and one count of leaving the scene of an accident resulting in death, a Class E felony. Following a sentencing hearing, on July 20, 2007, the trial court sentenced the petitioner to the maximum sentence of twenty-five years for aggravated vehicular homicide and two years for leaving the scene of an accident. His sentences were ordered to run concurrently. (Docket No. 8, Attach. 6).[1]

On June 10, 2008, the Tennessee Court of Criminal Appeals affirmed the sentences ordered by the trial court. *State v. Villasana*, No. M2007-01923-CCA-R3-CD, 2008 WL 2368911 (Tenn.

---

[1]The citations herein are to the technical record filed by the respondent unless otherwise indicated. (Docket No. 8).

Crim. App. June 10, 2008).  The Tennessee Supreme Court denied the petitioner's application for permission to appeal on December 8, 2008.  *Id.*

On April 21, 2009, the petitioner filed a petition for post-conviction relief, asserting that he was denied effective assistance of counsel and that his pleas were involuntarily and unknowingly entered.  The post-conviction court denied relief following a hearing.  The petitioner appealed, and the Tennessee Court of Criminal Appeals affirmed the judgment of the post-conviction court on December 20, 2012.  *Villasana v. State,* No. M2012-00518-CCA-R3-PC, 2012 WL 6645266 (Tenn. Crim. App. Dec. 20, 2012).  The Tennessee Supreme Court denied the petitioner's application for permission to appeal on April 10, 2013.  *Id.*

On June 17, 2013, the petitioner filed a *pro se* petition for a writ of *habeas corpus* in this court.  (Docket No. 1).  In his petition, the petitioner asserts three grounds for relief.  (Docket No. 1 at p. 5).  The petitioner names Henry Steward, the warden of the Northwest Correctional Complex, as the respondent.

Upon its receipt, the court conducted a preliminary examination of the petition and determined that the petitioner had stated a colorable claim for relief.  Accordingly, the court entered an order on June 25, 2013, directing the respondent to answer or otherwise respond to the petition.  (Docket No. 3).  The respondent filed a response urging the court to deny the petition and dismiss the action.  (Docket No. 12).  The petitioner filed a reply in opposition to the respondent's response.  (Docket No. 16).  The respondent filed a motion to strike the petitioner's reply, arguing that, in his reply, the petitioner attempted to amend his petition to assert two new claims.  (Docket No. 18).  By order entered on February 5, 2014, the court granted the respondent's motion.  (Docket No. 26).  The court then considered whether the petitioner should be permitted to amend his original petition to include the two claims (*see* Docket No. 25), but determined that the claims would not survive a

motion to dismiss. (*Id.*) The court therefore denied the petitioner's motion to amend as futile. (*Id.*)

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed in this matter. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the court shall dispose of the petition as to those grounds as the law and justice requires. Rule 8(a), Rules — § 2254 Cases.

Jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Criminal Court of Davidson County, Tennessee.

## II.     UNDERLYING FACTS OF CRIMINAL CONVICTIONS

### A.     Trial Court Proceedings

The following is taken from the opinion of the Tennessee Court of Criminal Appeals in *State v. Julio Villasana*, 2008 WL 2368911, at **1-3 (Tenn. Crim. App. June 10, 2008):

> [The petitioner], Julio Villasana, pled guilty to one count of aggravated vehicular homicide, a Class A felony, and to one count of leaving the scene of an accident involving death, a Class E felony. He was sentenced as a Range I, standard offender to twenty-five years for the former and to two years for the latter. The sentences were ordered to be served concurrently. . .
>
> . . . . .
>
> At [the petitioner]'s guilty plea submission hearing, the State set out the factual background for his offenses. On August 1, 2006, fifty-one-year-old Charlie Darrington (the victim) was riding his motorcycle in Davidson County. The victim was driving southbound on Briley Parkway, near Robertson Avenue, when [the petitioner] hit him head-on. The thirty-four-year-old Defendant was driving a sport utility vehicle on the wrong side of the roadway northbound in the southbound lanes of Briley Parkway. The victim died from injuries sustained in the crash.
>
> After the wreck, [the petitioner] did not stop to help the victim; he fled from the scene on foot. Witnesses at the scene gave

police a description of [the petitioner], and he was apprehended a short time later and brought back to the crash site where the witnesses positively identified him as the driver who killed the victim.

Because [the petitioner] exhibited signs of intoxication, field sobriety tests were administered, and [the petitioner] failed them. He then signed an implied consent form that was provided to him in Spanish because his primary language is Spanish. By signing the form, he agreed to give a blood sample, which revealed that his blood alcohol level was .23 percent.

Additionally, for the purpose of establishing all the elements of aggravated vehicular homicide, the State announced that [the petitioner] was previously convicted of driving under the influence (DUI) approximately one year earlier (on July 7, 2005) in Kentucky.

Following the State's establishment of the foregoing factual background, [the petitioner] agreed that those facts were "true and correct."

Subsequent to the guilty plea submission hearing, a sentencing hearing was held during which the State introduced certified judgments establishing that [the petitioner] had also been previously convicted of DUI on two other occasions: December 4, 1991; and October 12, 1996. His criminal record also included prior convictions for fleeing from a probation officer and assault.

Special Agent Craig Dickhaus of the United States Immigration and Customs Enforcement Office testified that [the petitioner] had also been previously arrested and charged with DUI in Texas on August 14, 1997; at the time of the instant offense, he was released on bail for the Texas DUI, and it had not been adjudicated. Special Agent Dickhaus further stated that [the petitioner] had two prior federal convictions for illegally entering the United States. Further, he had been officially deported from the United States three times, and, on eleven other occasions, he agreed to voluntarily return to Mexico rather than appear before an immigration judge. At the time of the sentencing hearing, [the petitioner] was also being prosecuted by federal authorities for illegal reentry after deportation.

The victim's wife, Susan Darrington, testified that she and the victim were married for twenty-four years, and they had one daughter. The victim had been an executive at Gibson Guitar

Corporation and a musician. Mrs. Darrington read a prepared statement detailing the extensive, negative effects her husband's untimely death has had on her and her daughter's life. She asked the court to impose the maximum sentence possible because [the petitioner] made the choice to drive intoxicated, and he "should have to face the consequences of that choice."

[The petitioner] testified that he "made a mistake [by] drinking a beer" before driving. He said he was lost in Nashville and trying to enter Interstate 40 when he turned off of Charlotte Pike and began traveling the wrong way down Briley Parkway. He apologized to Mrs. Darrington for the "great pain" he has caused in her life. He said he would have never committed the offense "on purpose because I am not a bad person, but I made the mistake to drink. I'm guilty."

On cross-examination, he denied laughing on the night of the offense when a witness asked him why he was driving down the wrong side of the road. He also denied running from the scene, despite the fact that he pled guilty to leaving the scene of an accident involving death. However, he admitted that he had consumed "six to eight" beers that night. [The petitioner] also admitted that he had three previous convictions for DUI and would have had a fourth if he had not been deported rather than being prosecuted. Further, he agreed that he had illegally reentered this country "on at least [fifteen] occasions."

After hearing the arguments of counsel, the trial court sentenced [the petitioner] as follows:

> "In determining the appropriate sentence for these offenses, the court has considered the evidence presented at the sentencing hearing, the presentence report, the sentencing principles embodied in [Tennessee Code Annotated] 40–35–103, the arguments made as to the appropriate sentence that should be imposed since alternative sentencing is not permitted in the aggravated vehicular homicide, the nature and characteristics of the criminal conduct involved, the evidence and information offered on enhancement and mitigating factors, the statement made by [the petitioner] at the sentencing hearing and [the petitioner]'s potential for rehabilitation and treatment, as well as the general purposes contained in [Tennessee Code Annotated] 40–35–102. The court

finds in both cases, counts one and three, that [the petitioner] is a range one offender, there being no prior felony convictions on his record. The court has also considered the enhancement factors of [Tennessee Code Annotated] 40–35–114. The court finds that number one applied, that [the petitioner] has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. I will agree that none of those are felonies, but notwithstanding that, [the petitioner] has a lengthy record, particularly as it relates to motor vehicle offenses involving the use of alcohol having been convicted in Kentucky on July 7, 2005, and in Texas on two occasions, April 30, 1997 and December 4, 1991. The court finds that to weigh heavily in this particular case because the case that he's before this court on today is a vehicular homicide. I want to make it clear for the record, two of those, I mean, one of those DUI's, I cannot consider for enhancement purposes because it's an element of the offense, and I'm not going to, but the reality of it is, he had two other ones in addition to that. The one, almost a year to the day, a year and three weeks prior, in Kentucky, prior to the incident that occurred here in Nashville on August 1st of 2006. The court considers that to be of great significance and places a great deal of weight on that."

Further, the trial court found that, because a condition of his release in his prior federal cases was that he live in Mexico, [the petitioner] had a previous history of unwillingness to comply with conditions of a sentence involving release in the community. See Tenn.Code Ann. § 40-35-114(8). The court specifically declined to apply as an enhancement factor that [the petitioner] had no hesitation about committing a crime when the risk to human life was high, finding that it was inherent in the offense of aggravated vehicular homicide. See Tenn.Code Ann. § 40-35-114(10).

As for mitigating factors, the court found that [the petitioner] had a relatively positive work history and that he showed "some remorse." See Tenn.Code Ann. § 40-35-113(13). However, the court also found that, by denying that he fled from the scene when the evidence clearly established otherwise, [the petitioner] lacked candor before the court and was not a credible witness. Further, the court

considered a number of other factors, including his potential for rehabilitation, his character and social history, family and community support, his history of compliance and non-compliance with court-ordered programs, the financial support he provided to his family, and available rehabilitative programs.

Ultimately, the court found that the maximum sentence was necessary in [the petitioner]'s case for the following, additional reasons:

> "[Nothing] short of the maximum sentence [will] protect the citizens from [the petitioner's] outright disregard and flagrant violations of the laws of the State of Tennessee. Though there's certainly some merit and some good things under the law that [the petitioner] has demonstrated, they are significantly and greatly outweighed by his continual and habitual violations of the rules of the road because he continually drives. Even when he's sober, he's illegally driving and therefore I'm going to sentence [the petitioner] to 25 years as a range one offender. I find that's necessary to avoid depreciating the seriousness of the offense, and it is serious not only because a person died as a result of it, [but also] because ... of his lengthy violation of the driving laws of this State, particularly as they relate to the use of alcohol. I also find that it is necessary to protect society by restraining a defendant who has a long history of criminal conduct and an obvious propensity to continue in criminal activities. I also find that it's necessary because less restrictive measures have been tried in the past, specifically the Kentucky DUI, when I think the only thing he received was a fine and short probationary period."

> Lastly, the court ordered that his two-year sentence for leaving the scene of an accident involving death would be served concurrently.

(*Id*.)

**B.     Direct Appeal**

On direct appeal, the petitioner argued that his sentence was excessive because the trial court misapplied the enhancement factor regarding his prior criminal activities and did not give the applicable mitigating factors sufficient weight. The Tennessee Court of Criminal Appeals disagreed, affirming the judgment of the trial court as follows:

> First we note that, based on our review of the record, we conclude that the trial court followed the statutory sentencing procedures, imposed a lawful sentence, gave due consideration and proper weight to the factors and principles set out under our sentencing law, and that its findings of fact are adequately supported by the record. Accordingly, we will presume that the determinations made by the trial court are correct. *See Ashby,* 823 S.W.2d at 169.

> The Defendant argues that the trial court misapplied Tennessee Code Annotated section 40–35–114(1), which states: "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." The Defendant does not dispute that he was previously convicted of all of the offenses enumerated at his sentencing hearing, including the three previous DUI convictions. Rather, he asserts that because the State allegedly failed to supply him with copies of the criminal convictions it intended to use for enhancement purposes during discovery, the trial court should not have considered them in enhancing his sentence. We are not persuaded by this argument. First, the record shows that the State made the Defendant's criminal record available to him during discovery. Second, the Defendant's prior record is set forth in the presentence report. Third, the Defendant testified at his sentencing hearing and admitted the validity of the criminal history detailed in the presentence report.

> Similarly, we are not persuaded by the Defendant's argument that the trial court erred by not affording applicable mitigating factors enough weight. Initially, we note that the weight to be given to enhancement and mitigating factors is left within the sound discretion of the trial court. *See State v. Terrell Antron Greer,* No. W2007–01192–CCA–R3–CD, 2008 WL 886309, at *6–7 (Tenn.Crim.App., Jackson, Apr. 2, 2008) (explaining that under Tennessee's new sentencing laws, enacted in response to *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), statutory mitigation and enhancement factors are advisory and not

mandatory). Further, we conclude that because of the egregiously reckless nature and seriousness of the Defendant's crime, the trial court was justified in ruling that applicable enhancement factors outweighed factors in mitigation. The trial court did not err by imposing the maximum sentence in this case.

*State v. Villasana*, 2008 WL 2368911, at *5 (Tenn. Crim. App. June 10, 2008).

## C. State Post-Conviction

As stated by Tennessee Court of Criminals Appeals in *Villasana v. State*, 2012 WL 6645266,

at **1- 2 (Tenn. Crim. Appl. Dec. 20, 2012):

> In his post-conviction petition, Petitioner asserted that he was denied the effective assistance of counsel and that his pleas were involuntarily and unknowingly entered. The post-conviction court denied relief following a hearing. After a careful review of the record, we affirm the judgment of the post-conviction court.
>
> . . . .
>
> At the post-conviction hearing, Petitioner testified that his trial counsel advised him "[w]hen she started [his] case," that his "sentence would be a minimum of eight [years] and a maximum of twelve [years]." He also testified that trial counsel told him that he "was going to get twelve years maximum sentence because [the victim] was American ... and because [Petitioner is] Mexican." Petitioner testified that trial counsel subsequently told him that his "sentence had gone from 15 to 25 years because [he] had been caught eleven times [by] immigration." He testified that he met with trial counsel "[l]ike five times, and the last time [was] when she told [him] to sign to accept 15 years."
>
> Petitioner testified that trial counsel advised him that he had a right to a trial. He testified, "I didn't want to go to trial because I am guilty, I just want to receive a sentence that is legal." Petitioner added, "I never would have signed for 25 years." Petitioner testified that he spoke to trial counsel "a week before [entering his guilty pleas] and [he] signed the paper saying [he] could get 15 to 25 years." Petitioner acknowledged that he answered under oath at the guilty plea hearing that he understood that the sentencing range was 15 to 25 years. Petitioner testified that he would not have pled guilty if he had known that he would be sentenced to 25 years.

On cross-examination, Petitioner testified that trial counsel told him that he could receive a sentence between 15 and 25 years but that trial counsel "told [him] the most would be 17" because the trial judge "was not a racist." Petitioner testified:

> [Assistant District Attorney]: So, when you plead [sic], you were aware that the judge could sentence you as high as 25 years, but you didn't think that he would, is that a correct understanding?
>
> [Petitioner]: Yes. I didn't think he would do that because [trial counsel] told me that the most would be 17.
>
> [Assistant District Attorney]: But you were aware that the Judge had the power to give you 25 if he wanted to, correct?
>
> [Petitioner]: Yes.
>
> [Assistant District Attorney]: And [trial counsel] advised you that the judge was not a racist, is that correct?
>
> [Petitioner]: Yes, sir.
>
> [Assistant District Attorney]: Do you have any evidence today that that was incorrect, that in fact the judge is a racist?
>
> [Petitioner]: No, he's not a racist, but--well he gave me 25 years.
>
> [Assistant District Attorney]: But you understand he had the power to give you 25 years without thinking about your race, correct?
>
> [Petitioner]: Yes, sir.
>
> [Assistant District Attorney]: [Trial counsel] told you that you could have a trial, correct?
>
> [Petitioner]: Yes, but she told me if I went to trial, I was going to lose for sure.
>
> [Assistant District Attorney]: And you today have said you are guilty, correct?

[Petitioner]: Yes, sir.

Petitioner testified that he would not have been pleased with the minimum sentence of 15 years either "because in the prison where [he is] there's a lot of cases worse than [his] and all of them have 8 [years] at 30 [percent release eligibility] or 9 [years] at 30." Petitioner acknowledged that his prior convictions for driving under the influence and his high blood alcohol content were considered in enhancing his sentence.

Petitioner's trial counsel testified that "we had an offer from the State that I did not think was a fair offer" and that she encouraged Petitioner to have a sentencing hearing. Trial counsel testified, "[t]here were obviously circumstances that made it aggravated" but that she believed Petitioner's "admirable work history" would "weigh heavily" in his favor. Trial counsel testified that Petitioner's recollection of their conversations regarding whether to go to trial was "fairly accurate[,]" and she testified, "we did discuss him having a trial, but only sort of cursorily, he did not want one, it was clearly a bad idea, he would have lost." Trial counsel testified that the State's offer was a fixed sentence less than what he received at the sentencing hearing. The exact offer by the State was never mentioned during the post-conviction proceedings. Trial counsel testified, "[i]n retrospect, there were things that occurred at the sentencing hearing that I had not anticipated, had I known all of those factors ahead of time I would have advised him differently about the State's offer." Specifically, trial counsel testified that Special Agent Dickhaus testified about Petitioner's "immigration issues." Trial counsel recalled that she "received a continuance of a couple of hours" to review information regarding Petitioner's prior deportations. Trial counsel objected to Agent Dickhaus' testimony as it related to enhancement of Petitioner's sentence. She testified that she did not receive the information prior to the sentencing hearing. Trial counsel testified that she explained to Petitioner that the sentencing range was 15 to 25 years and that she "hope[d] that [they] could get it down to maybe 17." She testified that she advised Petitioner that the maximum allowable sentence was 25 years, but she "didn't think it was likely from where [she] sat[.]"

(*Id.*)

## D.    State Post-Conviction Appeal

On appeal from the denial of his state petition for post-conviction relief, the petitioner argued

that his trial counsel was ineffective by incorrectly advising him as to the applicable sentencing range and that his guilty plea was unknowing and involuntary. The Tennessee Court of Criminal Appeals disagreed and affirmed the judgment of the post-conviction court. *See Villasana*, 2012 WL 6645266, at **3-4.

## III.    ANALYSIS

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The purpose of federal *habeas corpus* review is to "ensure that state court convictions

are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 365. A federal *habeas* court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* The issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

A. **As to Ground One, the petitioner has failed to state a cognizable claim under 28 U.S.C. § 2254**.

In Ground One of his petition for *habeas* relief, the petitioner alleges that the Tennessee courts misapplied Tennessee state law in connection with rendering his sentences. (Docket No. 1 at pp. 4-7). The respondent argues that this claim must be dismissed because it is not cognizable under federal *habeas* review. (Docket No. 12 at pp. 15-16).

A petition for federal *habeas corpus* relief may only be granted when it is found that a citizen is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). *See also* Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts (requiring that a *habeas* petition "specify all grounds

for relief available to the petitioner" and "the facts supporting each ground"). Because federal *habeas corpus* relief is only available to remedy errors of a federal nature, a claim that a conviction is the result a state court's misapplication of state law is not cognizable unless the petitioner can establish such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998); *see Abshear v. Moore*, 354 Fed. Appx. 964, 968 (6th Cir. 2009)(federal *habeas corpus* relief does not lie for errors of state law).

Here, the petitioner was sentenced to the maximum sentence permitted for the Class A felony to which the petitioner pled guilty. The petitioner now argues that the court misapplied the enhancement factor regarding the petitioner's prior criminal activities and that, because the State failed to supply the petitioner with copies of the criminal convictions it intended to use for enhancement purposes during discovery, those convictions should not have been considered by the court when sentencing the petitioner. (Docket No. 1 at p. 7). He also argues that the trial court did not give the petitioner's mitigating factors sufficient weight. (*Id.*)

However, in his petition for a writ of *habeas corpus*, the petitioner does not cite to a provision of the United States Constitution. (Docket No. 1 at p. 7). Nor does the petitioner cite to any case law employing constitutional analysis. (*Id.*) *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006)(a petitioner is deemed to have raised a federal constitutional claim by relying on federal cases employing constitutional analysis, relying on state cases employing constitutional analysis, phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific right, or alleging facts well within the mainstream of constitutional law)(citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). It appears, then, that the petitioner claims an error of

state law, specifically, that the Davidson County Criminal Court misapplied Tennessee Code Annotated § 40-35-114(1). Because this court must accept as valid a state court's interpretation of the statutes and rules of practice of that state, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the petitioner fails to state a claim upon which federal *habeas corpus* relief can be granted.[2] Accordingly, this claim must be dismissed.

**B.     No Certificate of Appealability shall issue as to Ground One of the petition.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a COA will not issue with respect to the petitioner's first ground for relief.

**C.     Ground Two fails because the state court's decision denying relief was not contrary to, or an unreasonable application of, clearly held federal law.**

In his federal *habeas* Ground Two, the petitioner claims that his trial counsel[3] was ineffective for allegedly misinforming him regarding his total potential sentencing range and regarding the

---

[2]It is worth noting that, once the respondent pointed out in its response to the petition (Docket No. 12) that Ground One advanced an issue of state law, the petitioner attempted to federalize his claim by way of an amendment introducing *Blakely* and double jeopardy components. (Docket No. 16). However, the court determined that the petitioner had not raised a *Blakely* or double jeopardy claim in his original petition, had not raised either claim in state court on direct appeal, and had not alleged ineffectiveness of counsel or any other ground sufficient to excuse a procedural default of those claims. (Docket No. 26 at p. 3). As a result, the court denied the petitioner the opportunity to amend his § 2254 petition to include *Blakely* and double jeopardy claims (*id.*), and those claims are not before the court at this time.

[3]The petitioner was represented by Ms. Amy Harwell, who worked for the Metropolitan Public Defender's Office at the time.

likelihood of receiving the maximum amount in that range. (Docket No. 1 at p 9). The respondent contends that this claim must be dismissed because its denial by the state court was not contrary to, or an unreasonable application of, the clearly held governing law of *Strickland v. Washington* and *Hill v. Lockhart*. (Docket No. 12 at pp. 16-17).

The Sixth Amendment to the United States Constitution guarantees the right of a person accused of a crime to the effective assistance of counsel. *McMann v. Richardson,* 379 U.S. 759, 771 (1970). To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002).

Counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams,* 367 F.3d 562, 570 (6th Cir. 2004).

The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. In the context of a guilty plea, to satisfy the second *Strickland* prong, a petitioner must show that, but for counsel's alleged errors, he would not have pleaded guilty but

would have insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002).

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland,* 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*)). The movant bears the burden of establishing his claim of ineffective assistance of counsel by a preponderance of the evidence. *Id.*

Here, the state court's decision that petitioner's counsel's performance was not deficient was neither contrary to, nor an unreasonable application of, state law. Ms. Harwell correctly advised the petitioner of the possible sentencing range, including the maximum end of the range. The petitioner admitted that he was guilty and that he did not want a trial. Ms. Harwell testified that the prosecutor had made a plea offer, but she did not think it was a fair offer and counseled the petitioner to have the trial court impose a sentence. She correctly advised him that entering an open plea could result in a lesser sentence than the one offered by the State in the plea bargain. She believed that the petitioner's work history and family life would weigh heavily with the trial court and that the petitioner had a reasonable chance of bettering the State's offer. She did, however, explain that the trial court could impose a twenty-year sentence, and the petitioner himself acknowledged that she informed him that he could receive the maximum sentence. The facts show that Ms. Harwell made an informed, strategic decision to allow the petitioner to enter an open guilty plea. That the ultimate sentence imposed was greater than the prosecutor's initial plea offer does not change the court's analysis as "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too

tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The court finds that the petitioner has not established that the decision of the state court on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Taylor*, 529 U.S. 362 (2000). Therefore, the court finds that Ground Two of the *habeas* petition is without merit, and the claim must be dismissed.

**D. No Certificate of Appealability shall issue as to Ground Two of the petition.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a COA will not issue with respect to the petitioner's second ground for relief.

**E. Ground Three fails because the state court's decision denying relief was not contrary to, or an unreasonable application of, clearly held federal law.**

In his federal *habeas* Ground Three, the petitioner claims that his guilty plea was not knowing and voluntary because he "met with Ms. Harwell 'like 5 times' and on the last meeting she told him to 'sign to accept 15 years'"; she told him that "the most he would get would be 17 years because Judge Fishburn is not 'racist'"; and he based his decision to plead guilty on Ms. Harwell's

representations to him and he would not have entered his pleas had he known he could have received a twenty-five year sentence. (Docket No. 1 at p. 11). The respondent contends that the court must dismiss Ground Three because the claim is based on the petitioner's ineffective-assistance claim asserted in Ground Two, which is meritless, and because the state court reasonably applied governing law to find that the guilty plea was both knowing and voluntary. (Docket No. 12 at pp. 19-21).

First, the state court's decision regarding Ground Three was reasonable. The claim depends on a finding that the petitioner's trial counsel was constitutionally ineffective in advising him during the guilty-plea negotiations and hearing. (Docket No. 1 at p. 11). As the court previously has concluded, however, the petitioner's ineffective-assistance claim fails; consequently, Ground Three fails.

Second, the state court reasonably applied governing federal law. To satisfy the dictates of due process, guilty pleas not only must be voluntary but they must have been knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States,* 397 U.S. 742, 747-48 (1970)(citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among alternatives. *See North Carolina v. Alford,* 400 U.S. 25, 31 (1970). "While a defendant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect on future sentence, he must be aware of the maximum sentence to which he is exposed." *Ruelas* v. *Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).

A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal *habeas* review, rebuttable only by clear and convincing

evidence. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993); *see also* 28 U.S.C. § 2254(e)(1). When a defendant brings a federal *habeas* petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding. *Garcia,* 991 F.2d at 326. However, when the transcript is inadequate to demonstrate that a plea was voluntary and intelligent, the presumption of correctness no longer applies. *Id.* at 327.

The petitioner has not rebutted the state court's factual determinations, which are entitled to a presumption of correctness on federal *habeas* review. *Garcia,* 991 F.2d at 326. There was no indication that the petitioner was incompetent or unable to understand the plea proceedings. Indeed, despite the petitioner's argument in the instant petition, under oath at his guilty plea hearing the petitioner testified that he fully and completely understood the contents of the guilty plea petition. (Guilty Plea Hearing Transcript, Docket No. 8-2 at p. 72). He further testified that he understood the charges against him and what the State would have to prove to convict him. (*Id.* at p. 73). He testified that he understood the sentence ranges, which the judge reiterated to him, and that he could receive the maximum sentence. (*Id.* at pp. 74-75). He confirmed that he had discussed the plea with his attorney and that she explained the law and the evidence to him. (*Id.* at pp. 75-76). He testified that she had explained all of his questions to his satisfaction and that he had no complaints regarding her representation. (*Id.* at p. 76). He confirmed that he understood the rights he would be giving up. (*Id.* at pp. 77-80). He testified that he understood the consequences of his conviction, including his residency status in the country. (*Id.* at pp. 80-81). He further testified that the plea was not the product of coercion. (*Id.* at p. 81). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations carry a strong presumption of verity. *Blackledge v. Allison*,

431 U.S. 63, 73-74 (1944). In light of the uncontradicted evidence, the state court reasonably applied the governing law to deny the petitioner relief.

The court finds that the petitioner has not established that the decision of the state court on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Taylor*, 529 U.S. 362 (2000). Therefore, the court finds that Ground Three of the *habeas* petition is without merit.

**F.      No Certificate of Appealability shall issue as to Ground Three of the petition.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a COA will not issue with respect to the petitioner's third ground for relief.

**III.      CONCLUSION**

Accordingly, the petition will be denied, and this action will be dismissed for failure to state a claim upon which *habeas corpus* relief can be granted. Rule 4, Rules - - - § 2254 Cases. A Certificate of Appealability will not issue as to any of the claims. Because an appeal from the judgment of the court would not be taken in good faith, the petitioner will not be certified to appeal the judgment of the court *in forma pauperis*.

An appropriate order will enter.

Kevin H. Sharp
United States District Judge